In the Matter of JAMES O. PORTER, an Attorney, Respondent.
BAR ASSOCIATION OF ERIE COUNTY, Petitioner.

Fourth Department, April 9, 1970.

*David E. Brennan* for petitioner.

*John M. Garrity* and *James O. Porter,* respondent in person, for respondent.

*Per Curiam.* Respondent was admitted to the Bar by this court on January 16, 1936. By his own testimony he presently has no clients and represents no one. He was formally charged by petitioner with violations of canons 1 (duty to the courts), 6 (conflicting interests), 11 (abuse of confidence), 22 (candor and fairness), 29 (upholding the honor of the profession) and 32 (lawyer's duty) of the Canons of Professional Ethics, and section 2040 of the former Penal Law (now Real Property Law, § 235 — lease violation) and section 1302 (now § 155.05, subd. 2 — conversion of property held in trust).

After issue was joined the proceeding was referred to hear and report. Following a trial of several days the Referee filed a report in which he found respondent guilty of a number of acts of misconduct and, in particular, of violating canon 6 of the Canons of Professional Ethics.

The record amply sustains the findings and there were other violations proved which were not specifically passed on by the Referee.

In the period between August 26, 1963 and August 29, 1966 respondent was convicted on five occasions of violations of the Multiple Dwelling Law and the Buffalo City Ordinance. On June 25, 1965 he was convicted of violating section 2040 of the Penal Law, in that he had willfully failed to provide heat pur-

suant to a rental agreement, and served 20 days of a 30-day sentence in Erie County penitentiary. In addition, four real estate firms managed and controlled by him (of two of which he was the principal stockholder) were convicted of similar violations on 28 occasions between August, 1963 and April, 1966.

These flagrant and repeated statutory violations reflect a failure by respondent to heed the precept of canon 32 that a lawyer "must  *  *  *  observe the statute law". They also represent a failure to perform the duty enjoined by canon 29 to "strive at all times to uphold the honor and to maintain the dignity of the profession".

There was also proof that respondent, after advising long-time clients to take money from the bank and invest it in mortgages, represented them when they loaned $4,500 to one of the real estate corporations wholly owned by him, taking back a second mortgage. However, the mortgagees were not informed there was a prior mortgage on the property and understood theirs was a first lien. Such concealment of the precedent encumbrance was reprehensible conduct. (*Matter of Harris*, 25 A D 2d 862.) No principal payment was made on this mortgage or on a chattel mortgage hereinafter mentioned, and when the clients became concerned with the adequacy of the security respondent suggested that they discharge these obligations as part payment *upon closing* of the purchase by them of other property owned by another corporation. The contract subsequently embodying this arrangement, which was accompanied by a $7,200 cash down payment, made the transfer contingent upon execution of a lease of the premises by a third party. The lease was never executed and the sale was never consummated, but the discharge of the clients' mortgage on the other piece of property was recorded and that property was conveyed to a purchaser free and clear without the mortgagees' knowledge. The property which was the subject of the purchase contract was also conveyed, this to another corporation controlled by respondent. Respondent's clients were unaware of the filing of the mortgage discharge until eight years thereafter when one of them inspected the records in the County Clerk's office; meanwhile the clients, believing that they still held the mortgage and also had rights under their purchase contract, received interest payments from respondent on both the mortgage and the $7,200 cash down payment for some three years after the property described in the contract had been conveyed, by an unrecorded instrument, to the second corporation owned and controlled by respondent.

What has been recited with regard to the property mortgage is equally true with respect to a chattel mortgage received by these same clients from a corporation represented by respondent. Cancellation of this mortgage was also recited as part payment of the purchase price in the land transaction which was never completed, the mortgage discharge was recorded without their knowledge and the clients received interest payments on the chattel mortgage from respondent for several years. The payments of interest only on the chattel mortgage and the property mortgage for a few years after the discharges misled the clients to believe they still had the mortgages as security for their loans.

In fact, what happened as the result of respondent's exercise of influence over the clients, his failure to reveal his personal interest in the mortgagor corporation and his unauthorized filing of the mortgage discharges, is that the clients, upon respondent's recommendation, unknowingly loaned funds to a corporation in which respondent had a personal interest and subsequently lost their security for such loan by respondent's improper and unauthorized filing of a discharge of the mortgage securing such loan without the knowledge of his clients. Respondent has also been responsible for the conveyance of property by one of his real estate corporations to another of his corporations while there was an executory contract of sale to his clients outstanding, without notice to the clients and under circumstances which justify the conclusion that there was an intent to conceal such transfer from his clients.

Respondent's denial at the hearing before the Referee that he ever acted as attorney for these clients is controverted by the testimony given at the investigation by petitioner association that he had represented these people for 15 or 20 years and his admission that he represented them and the chattel mortgagor at the time of the execution of the chattel mortgage. His giving of false testimony in the disciplinary proceedings, whether before a committee on grievance or a Referee, aggravates further the original professional misconduct. (*Matter of O'Doherty,* 14 A D 2d 4, 8, affd. 11 N Y 2d 1028.)

There was proof that another client of respondent, whose husband's estate was being handled by him, loaned money to the same two corporations owned by respondent, secured by mortgages on improved property in the City of Buffalo. On one of the properties there was a substantial prior mortgage held by respondent's wife, but not referred to in the client's mortgage, such that the total of the mortgages was more than twice the appraised full value of the property, the first mort-

gage alone exceeding the appraised value. Subsequent to these two loans made by this client, the improvements on both mortgaged sites were condemned and demolished. No principal payment was made and interest payments on the mortgages are in arrears as are city, county and sewer taxes. In the case of one of the properties, respondent caused the site to be conveyed to the second corporation without an assumption of the mortgage, and an action has since been instituted against the mortgagor-grantor corporation on a sizeable money claim by a third party.

Respondent rendered bills to, and received payments from, this client's estate after her death for professional services and disbursements in connection with a transfer of property by the client's brother to a third party and two years later he billed the estate and received payment for broker's commissions on this sale when such charges were clearly not an estate obligation. Although he had drawn her will and she left an infant child surviving, he did not offer the same for probate, testifying on petitioner's investigation that the estate was not large enough but at the Referee's hearing that he had been unable to locate the will. Respondent also made false statements in the course of the Bar Association's investigation when he described the contents of her estate, omitting the two mortgages held against respondent's corporations which he himself had prepared.

In view of respondent's false statements and the fact he represented her husband's estate, prepared her will, a deed and the mortgages already referred to, the denial by respondent that he represented her at the time of the mortgage transactions with his corporations is incredible.

In the various transactions with clients detailed above the conclusion is inescapable that respondent took advantage of his relationship with these clients to obtain funds for his corporations while failing to disclose to them all the facts relative to the investments, including his interest in the corporate borrowers, and without express consent to his representation of all parties concerned. This was a violation of canon 6. Furthermore, he failed in his duty to his clients in neglecting to protect their interests and in particular in failing to preserve their security for moneys advanced. In short, he " used his position as an attorney and his relation to his client to the distinct detriment of his clients and to his own advantage ", thus violating his duty of good faith to his clients and degrading the profession. (*Matter of Flannery,* 150 App. Div. 369, 388.)

In another transaction respondent received $500 delivered in connection with a purchase offer for property owned by a cor-

poration belonging to respondent's wife. The contract was contingent on rezoning and was to be null and void if the conditions were not met. The $500 payment was delivered by check payable to "James Porter as Att.", with a notation "Deposit— Land on Potter Rd.". The purchaser testified that the check was for a deposit *to be held in escrow* until the closing, and respondent did not dispute this testimony. However, despite the fact that rezoning was never secured and the contract was never completed, respondent cashed the check and has never repaid the same to the purchasers, even though many requests have been made. He admitted he never made any attempt to hold the funds in escrow, but claimed that he had delivered the cash to his wife and defended the failure to repay the deposit on the basis of an order in bankruptcy restraining respondent and his wife from transferring their assets or assets of their corporations. It is undeniable however that respondent either misappropriated these funds to his own use or, accepting his testimony that the funds were turned over to his wife, that he misapplied them in violation of his fiduciary duty as escrowee of the money pending closing of the sale. (Cf. *Schuman* v. *Conforti,* 30 A D 2d 968, affd. 26 N Y 2d 755.)

In sum, respondent has willfully violated the Multiple Dwelling Law and the ordinances of the City of Buffalo on repeated occasions, which has adversely reflected on the dignity of the profession, has given conflicting testimony at hearings, has failed to reveal conflicting interests and has taken advantage of his relationship with clients by borrowing money from them for corporations he controlled with inadequate security, has impaired the rights of his clients by releasing security for their loans without authority, has improperly charged an estate for legal services and commissions in connection with the sale of property which he knew did not belong to the estate, has either misappropriated or misapplied funds held by him as escrowee, and has neglected his duty as a lawyer by failing to probate the will of a client who left an infant child surviving, and whose estate included claims against corporations owned by him. These cumulative acts of misconduct indicate that respondent is not honest in financial matters, has failed to uphold the dignity and integrity of the Bar and does not merit the confidence of the public or the profession. He lacks the character and fitness requisite for an attorney at law and should be disbarred.

GOLDMAN, P. J., DEL VECCHIO, WITMER, BASTOW and HENRY, JJ., concur.

Order of disbarment entered.